,IN THE COMMONWEALTH COURT OF PENNSYLVANIA

North Coventry Township       :
                                   :
        v.                     :  No.  1023 C.D. 2020
                                   :  Submitted:  June 4, 2021
Josephine Tripodi and Geri Carr,  :
           Appellants       :


BEFORE:   HONORABLE ANNE E. COVEY, Judge
                  HONORABLE J. ANDREW CROMPTON, Judge
                  HONORABLE BONNIE BRIGANCE LEADBETTER, Senior Judge


OPINION NOT REPORTED

MEMORANDUM OPINION
BY JUDGE CROMPTON            FILED:  December 22, 2021


Before this Court is the appeal of Josephine Tripodi (Appellant J.T.) and Geri Carr[1] (Appellant G.C.) (collectively, Appellants) from the September 8, 2020 Order (Order) of the Court of Common Pleas of Chester County (trial court), directing the sale of the Kline Place Apartments (the Property) at issue in the present matter, due to Appellants' refusal to comply with the trial court's previous orders and being found in civil contempt of the trial court's July 9, 2019 orders.[2]

---

[1] Geri Carr is the daughter of Josephine Tripodi and has, at times, during the course of litigation in this matter been referred to as Geri Carr Tripodi.

[2] In its September 8, 2020 Order, the trial court notes that the finding of contempt was made during a hearing on November 4, 2019, but was not entered of record until January 6, 2020, in order to provide Appellants with additional time to comply with the trial court's July 9, 2019 orders.  In addition, the trial court notes that Appellant J.T. was found in contempt of three of its prior orders and that it concluded those orders could only be enforced by sale of the Property.  Trial Ct. Order, 9/8/2020, at 1; Reproduced Record (R.R.) at 84a.

## I.    Background

Appellant J.T. owns the Property,[3] which is located in North Coventry Township (Township).  On November 14, 2007, the Township filed an action in the trial court seeking relief relative to Appellants' noncompliance with the Township's property maintenance, plumbing, and electrical codes at the Property. The litigation in this matter has been ongoing from 2007 through the present, including multiple appeals to this Court.[4]

In February 2008, the Township sought a preliminary injunction to preclude Appellant J.T.'s use of the Property due to her continued violations of the Township's codes. Following a preliminary injunction hearing, the trial court issued an order on April 25, 2008, requiring Appellant J.T.'s compliance with an in-court agreement reached between her and the Township.  The agreement provided that the Property would be inspected and that a work schedule would be created for correction of the Property's code violations.

Thereafter, the Township filed petitions for contempt on October 8, 2008, and January 16, 2009.  At a February 6, 2009 hearing before the trial court regarding the Township's contempt petitions, the parties reached an agreement that Appellant J.T.

---

[3] Appellants describe Kline Place Apartments as "consisting of 27 townhomes that [Appellant J.T.] has owned for many years."  Appellants' Br. at 3.

[4] *See N. Coventry Twp. v. Tripodi* (Pa. Cmwlth., No. 1214 C.D. 2010, filed Mar. 24, 2011); *N. Coventry Twp. v. Tripodi* (Pa. Cmwlth., No. 2075 C.D. 2010, filed June 15, 2011); *N. Coventry Twp. v. Tripodi* (Pa. Cmwlth., Nos. 831 & 832 C.D. 2012, filed Feb. 20, 2013); *N. Coventry Twp. v. Tripodi* (Pa. Cmwlth., No. 851 C.D. 2017, filed June 4, 2018); and *N. Coventry Twp. v. Tripodi* (Pa. Cmwlth., No. 1073 C.D. 2019, filed Mar. 9, 2021), *appeal denied*, (Pa., No. 161 MAL 2021, filed Oct. 1, 2021).  The background information in the present opinion is gleaned, in part, from these earlier opinions of this Court.

would sell the Property to her daughter, Appellant G.C.[5] The agreement also provided that a master would be appointed to arrange for inspections and access to the Property, approve a contractor to perform work on the Property, and resolve any disputes with respect to the scope of the work. The trial court entered an order, on February 26, 2009, and attached the parties' agreement to it.

On March 6, 2009, the Township filed another petition for contempt. By order dated June 12, 2009, the trial court appointed a Master with authority to oversee the necessary repairs, improvements, renovation, and maintenance to bring the Property into compliance with the relevant Township codes. The trial court also ordered Appellant J.T. to pay fees for third-party consultants retained by the Master and to place money into an escrow account for the use of the Master for fees, costs, and expenses of engaging consultants to establish and prepare the plan of repair and remediation for the Property.

On June 26, 2009, the Township filed another petition for contempt against Appellant J.T. for failure to cooperate with the Master and for not allowing inspections of the Property, as required by the April 25, 2008 court order and the parties' in-court agreement. Following a hearing on August 14, 2009, and by order dated August 26, 2009, the trial court found Appellant J.T. in contempt of the trial court's orders dated April 25, 2008, February 26, 2009, and June 12, 2009. The trial court concluded that its prior orders could only be enforced by the sale of the Property in a reasonable commercial manner conditioned upon the buyer remediating the Property and bringing it into compliance with the Township's codes or demolishing the structures. The trial court also ordered Appellant J.T. to pay the Township's attorney's fees and costs, and the Master's fees, costs, and expenses. Appellant J.T. did not appeal the trial court's

---

[5] The record does not reveal whether this sale occurred, and Appellants deny that it did.

3

final order, dated August 26, 2009, although she did file motions for reconsideration and an untimely praecipe for determination. By order dated May 20, 2010, the trial court denied reconsideration, concluding it did not have jurisdiction to reconsider its August 26, 2009 order.

Appellant J.T. then appealed to this Court, and we ultimately affirmed the trial court's order. During the pendency of the appeal, the Township filed a fifth contempt petition with the trial court on June 9, 2010, averring that Appellant J.T. refused to cooperate with the Master. On September 13, 2010, the trial court held a hearing, during which the Township presented testimony that, although Appellant J.T. was to notify the Township before making any repairs to the Property so that the Township could ensure the repairs were performed in accordance with the trial court's remediation plan, Appellant J.T. did not notify the Township regarding repairs that addressed any of the Property's plumbing, electric, structural, or health issues. The Township also presented testimony that Appellant J.T. failed to pay $34,170 that she owed for Master's fees, costs, and expenses, and that the Township had not collected any of the $12,411 in attorney's fees previously ordered by the trial court. Appellant J.T. testified that she did not believe she owed any money and that she had given a list of the Property's code violations to a Township-approved contractor so that the contractor could make the repairs. Appellant J.T. acknowledged that she did not notify the Township before she had an electrician or plumber perform repairs at the Property.

On September 22, 2010, the trial court issued an order finding Appellant J.T. in contempt of its orders for her deliberate and willful refusal to obey the prior orders from which she had taken no appeals. The trial court concluded that Appellant J.T. could purge her contempt and avoid incarceration by remitting to the Township the sum of $46,581.96. Appellant J.T. then appealed to this Court, and we affirmed the trial court.

4

Subsequent litigation arose out of the trial court's scheduling of a status hearing in May 2016. The trial court continued the hearing at the request of Appellants because they informed the trial court that their counsel would be withdrawing her appearance. Shortly thereafter, Appellants' counsel filed a motion for leave to withdraw as counsel on July 11, 2016, which the trial court granted on August 17, 2016. At some point in time, the Master presented Appellants with invoices, and Appellants, then acting *pro se*, filed objections to the invoices on August 25, 2016. The trial court issued an order, scheduling proceedings for October 26, 2016. On September 9, 2016, the Township filed a petition for an order requiring inspection of the Property and approval of payments from the escrow held by the Township for inspection and engineering services. The Township's petition also requested that the trial court enter judgment for attorney's fees and costs. The trial court issued a Rule to Show Cause (Rule) upon Appellants, setting a hearing date for October 26, 2016, and specifically advising Appellants that the trial court would deem the allegations of the petition admitted if Appellants did not file an answer by October 5, 2016.

Appellants subsequently filed a motion for extension of time, requesting additional time to secure legal counsel for the evidentiary hearing. The trial court granted the motion, continuing the hearing until December 15, 2016, which the trial court later changed to December 22, 2016, due to a scheduling conflict. The trial court also ordered Appellants to inform it, by November 21, 2016, of the identity of their new counsel. In addition, the trial court ordered Appellants' new counsel to enter an appearance by November 23, 2016. The trial court warned that failure to secure counsel would not lead to any further continuances.

Appellants again moved for an extension of time on November 21, 2016, to which the Township objected. The trial court denied a further extension on November 30, 2016. Appellants did not answer the Rule. The trial court extended the hearing

5

date to January 19, 2017, again for scheduling reasons, and Appellants appeared *pro se* at the hearing. Appellants renewed their motion for extension of time to secure counsel on December 16, 2016, and January 18 and 19, 2017, to no avail. In February 2017, Appellants filed an Opposition to (the Township's) Proposed Order, which the trial court treated as argument rather than evidence.

The trial court issued an order, dated April 25, 2017, based on evidence presented at the January 19, 2017 hearing, as well as on evidence presented in prior proceedings. The trial court's order: (1) authorized the Township to use and expend up to $10,000 from an escrow account of $15,000 to engage an engineer to perform an independent full building and maintenance code inspection and to review all buildings/apartments that were part of the Property; (2) authorized the Township to use and expend up to $5,000 from the escrow fund to engage a real estate appraiser to appraise the present fair market value of the Property; (3) directed Appellants to make the Property available for inspections by the engineer and the real estate appraiser, Township representatives, and the Master, and noted that if they failed to cooperate within five days, the Township had the right to enter the buildings and apartments; (4) entered judgment in favor of the Master for $61,803.75; (5) entered judgment in favor of the Township for $34,093.65, for attorney's fees and costs; and (6) directed the Master to issue a report to the trial court, after reviewing the engineer's and real estate appraiser's reports. Trial Ct. Order, 4/25/17.[6]

Appellants explain in their brief in the present appeal that there are currently two disputes ongoing at the same time. One dispute is their appeal of the trial court's

___

[6] This latter order was the subject of this Court's opinion in *North Coventry Township v. Tripodi* (Pa. Cmwlth., No. 851 C.D. 2017, filed June 4, 2018), in which we quashed Appellants' appeal for failure to serve their Pa. R.A.P. 1925(b) statement on the trial judge, resulting in the issues being waived.

6

subsequent July 9, 2019 orders,[7] primarily regarding whether Appellants may be required to pay $500,000 to cover mold inspection and remediation efforts.[8] The other

---

[7] The trial court issued three Orders dated July 9, 2019.

> In the first order, the trial court merely indicates that the court is issuing the order and a contemporaneous order because a fund needs to be established for payment of inspection fees, remediation, and costs. The order indicates that failure to comply with the order may result in the [Property] being sold and/or a finding of contempt. The second order denies what is characterized as Appellant [J.T.]'s "Motion for New Trial/Hearing." This order specifically states "an appeal from this [o]rder will be considered interlocutory and will not divest [the trial court] of jurisdiction." The third order is more detailed, and it directs [Appellants] to deliver to an appointed Master either []: 1) [a] $500,000 check; or 2) personal financial information . . . . The [o]rder directs how the $500,000 is to be used by the Master including the payment of [a] judgment of $34,093.65 in favor of the Township, [a] judgment of $61,803.75 in favor of the Master, and a second judgment of $37,091.25 in favor of the Master. The rest of the order indicates how the remaining money is to be utilized. If [Appellants] decide to provide financial information to the Master rather than make the $500,000 deposit, the order indicates what information must be submitted to the Master.

*N. Coventry Twp. v. Tripodi* (Pa. Cmwlth., No. 1073 C.D. 2019, filed Aug. 17, 2020), slip op. at 2, *appeal denied*, (Pa., No. 161 MAL 2021, filed Oct. 1, 2021).

[8] We previously addressed this issue in our opinion in *North Coventry Township. v. Tripodi* (Pa. Cmwlth., No. 1073 C.D. 2019, filed March 9, 2021), in which we affirmed the trial court. In our opinion, we rejected Appellants' arguments that the trial court, in its July 9, 2019 orders, inappropriately required them to deposit $500,000 in a fund for repairs to the Property and that the trial court was inappropriately requiring them to remediate mold at the Property, where the Appellants asserted that there was no such requirement in the law and that the existence of any mold was a result of the Master's failures over time. We further rejected Appellants' assertion that Appellant G.C. should not have been treated as if she was an owner of the Property and made subject to any of the requirements placed upon her mother, Appellant J.T. We stated:

> [Appellant G.C.] sought to intervene in this litigation many years ago and was joined as a party defendant in June 2009. As the Pennsylvania Rules of Civil Procedure make plain: "After the entry of an order allowing intervention, **the intervener shall have all the** rights and **liabilities of a party** to the action." Pa.R.[Civ.]P. [] 2330 (emphasis added). Further, as our Supreme Court enunciated in *In re Appeal of the Municipality of Penn Hills*, 546 A.2d 50, 52 (Pa. 1988): "Given

**(Footnote continued on next page…)**

7

dispute, which is the issue before us in the current matter, is an appeal from a September 8, 2020 Order of the trial court holding Appellants in contempt of the earlier July 9, 2019 orders and compelling an involuntary sale of the Property.

## II.    The September 8, 2020 Order of the Trial Court

The trial court's September 8, 2020 Order reads, in pertinent part, as follows:

> AND NOW, this 8th day of September, 2020, having found [Appellants] to be in civil contempt of the [trial court's] [o]rders of July 9, 2019, and [Appellants] remaining adamant in refusing to comply with [o]rders of [the trial court], including [the trial court's] [o]rder of August 26, 2009, it is hereby ORDERED and DECREED as follows:
>
> 1.    The Master appointed herein . . . shall negotiate a listing broker agreement for the sale of the Property "AS IS" . . . ;
>
> . . . .
>
> 4.    The Master shall review all proposed agreements of sale with listing broker and shall recommend to the [trial court], and seek its approval, of an agreement of sale that provides [Appellants] the highest "AS IS" purchase price that is commercially reasonable;
>
> 5.    No proposed offer for the purchase of the Property of less than one million dollars ($1,000,000) shall be considered by the [trial court];
>
> 6.    At the time of settlement pursuant to a [trial-court] approved

---

the absence of limitations to the contrary . . . an intervenor participates in the appeal with all the attendant rights of any other party."

[Appellant G.C.] chose to intervene in the present matter in 2009. She cannot now assert she is a mere representative or observer or that she can move in and out of the litigation at will. Further, to suggest that [Appellant G.C.] has no interest in the Property seems disingenuous in light of the fact that, at one time, the parties had agreed [Appellant G.C.] would purchase the Property from her mother. Accordingly, we reject the argument that [Appellant G.C.] cannot be held accountable in the same way [Appellant J.T.] may be.

*N. Coventry Twp. v. Tripodi (Pa. Cmwlth.,* No. 1073 C.D. 2019, filed Mar. 9, 2021), slip op. at 8.

agreement of sale, the buyer of the Property shall place in escrow with the Master a letter of credit, bond or cash sufficient, in the [Master's] discretion, to complete all necessary remediation and repairs of the Property to bring it into compliance with all applicable law, codes and regulations and [o]rders of [the trial court]. The agreement of sale shall further contain provisions that the Township may seek relief from the trial [c]ourt to use the posted escrow security to complete the remediation and repairs of the Property should the buyer fail to do so within a commercially reasonable timeframe after settlement. Upon completion of all remediation, repairs and code compliance, the escrow security, or any remaining portion thereof, may be released to buyer with [trial court] approval;

. . . .

13.     Upon payment of all monies owed, and after completion of all remediation and repairs necessary to bring the Property into legal compliance, the Master may seek approval by the [trial court] to disburse the balance of the purchase price to [Appellants;]

. . . .

16.     [Appellants] shall not, directly or indirectly, impede or interfere with the Master or the Township in the performance of their [trial-court] ordered or legal responsibilities with respect to the Property.

17.     [Appellants] shall not, directly or indirectly through a third party, purchase the Property or any interest in the Property.

Trial Ct. Order, 9/8/20, at 1-3; Reproduced Record (R.R.) at 84a-86a.[9]

---

[9] In footnote 6 on page 3 of the September 8, 2020 Order, the trial court stated:

During the August 27, 2020 proceeding, [Appellants] offered to pay the amount of $336,330.78 to satisfy all outstanding monies owed[,] which include[s] the amount estimated by Lewis Environmental to remediate the mold issues at the Property. This is the first offer by [Appellants] to comply with any of the [trial court's] prior orders over the last thirteen (13) years. However, the offer would not resolve the code compliance issues that have existed for the past thirteen (13) years. The [trial court] is not inclined to again engage with [Appellants] in the same contemptuous and dilatory conduct for the next thirteen (13) years. In addition, [Appellant G.C.] offered during the hearing to buy the Property. However, she was

**(Footnote continued on next page…)**

The trial court filed a subsequent Order on October 6, 2020, directing Appellants to file a Concise Statement of Errors Complained of on Appeal (also Concise Statement or Statement). This Order, read in pertinent part:

> AND NOW, this 6th day of October, 2020, it is hereby ORDERED that pursuant to Pa. R.A.P. 1925(b), [Appellants' then-attorney], is hereby ORDERED to file of record and serve upon the undersigned [, *i.e.*, Judge William P. Mahon], a concise statement ("Statement") of the errors complained of on appeal in the above captioned matter. The Statement must be of record. The Statement must be served upon the undersigned pursuant to Pa. R.A.P. [] 1925(b)(1). The Statement must be filed and served no later than twenty-one (21) days from the date on the docket of this Order. Any issue not properly included in the Statement timely filed and served . . . shall be deemed waived . . . .

On October 26, 2020, Appellants filed their Concise Statement. R.R. at 76a-80a. A certified mail receipt in the record reflects that the Concise Statement was sent to the trial court judge on October 28, 2020. R.R. at 82a. On November 30, 2020, the trial court issued an Order in Lieu of Pa. R.A.P. 1925(a) Opinion, stating, in pertinent part:

> [T]his appeal is not cognizable and, therefore, we respectfully request that it be quashed. On October 26, 2020, while represented by counsel, Appellants filed a pro se Concise Statement of [Errors] Complained of on Appeal of September 8, 2020 Order Pursuant to Pa. R.A.P. 1925(b) ("pro se Statement["]). On October 27, 2020, Appellants also filed a counseled Concise Statement of [Errors] Complained of on Appeal of September 8, 2020 Order Pursuant to Pa. R.A.P. 1925(b) ("counseled Statement"). As we will explain, service on the [trial court] of each of the aforementioned Concise Statements is either non-existent or defective. Accordingly, this [trial court] will not substantively address the merits of this appeal.

---

obligated to buy the Property by a February 26, 2009 [trial-court] ordered agreement with which she never complied. Her purchase of the Property would not resolve any of the remediation and code compliance issues that have existed for the last thirteen (13) years.

Although Appellants filed a timely pro se Statement on October 26, 2020, they failed to serve it on the [trial judge] as required by [Pa. R.A.P. 1925(b)]. The undersigned learned of Appellants' Statement only by reviewing the docket in this matter to determine whether Appellants were abandoning this Appeal. As a result of Appellants' failure to serve a copy of their *pro se* Statement upon the undersigned, any issues which they may now seek to raise on this appeal to the Commonwealth Court are waived . . . .

With respect to Appellants' counseled Statement filed on October 27, 2020, but not postmarked for service upon the undersigned until October 28, 2020, this filing is untimely and will not be considered. Here, the record reveals that the [trial court] served Appellants with an order requiring that their [] Statement be filed and served within twenty-one (21) days.

Specifically, pursuant to the [trial court's] Order of October 6, 2020, counsel for the Appellants was directed to file and serve a [Statement] no later than twenty-one (21) days from the entry of that Order. Counsel had until October 27, 2020, to provide a copy of his counseled Statement to the U.S. Postal Service to be served upon the undersigned. However, counsel acquiesced until October 28, 2020, to attempt to serve the counseled Statement . . . . Because this is not a case where personal service upon the [trial court] was attempted by counsel and thwarted by the Prothonotary . . . this appeal is not cognizable.

R.R. at 88a-89a.

Appellants appeal to this Court.[10]

---

[10] To the extent the issues this Court is asked to address are solely questions of law, the standard of review is *de novo* and the scope of review is plenary, as this Court may review the entire record in making its decision. *Probst v. Dep't of Transp.*, *Bureau of Driver Licensing*, 849 A.2d 1135 (Pa. 2004). To the extent Appellants assert that the trial court abused its discretion, we note that "an abuse of discretion occurs where the trial court 'reaches a conclusion that overrides or misapplies the law, or where the judgment exercised is manifestly unreasonable, or is the result of partiality, prejudice, bias, or ill will.'" *Mitchell v. Shikora*, 209 A.3d 307, 314 (Pa. 2019) (quoting *Com. v. Wright*, 78 A.3d 1070, 1080 (Pa. 2013)). "To the degree the issue of whether the law has been misapplied involves a purely legal question, it is reviewed *de novo*." *Id*. at 314. The trial court's factual determinations are sustained where supported by substantial evidence in the record before it.
**(Footnote continued on next page…)**

11

### III. Arguments

### A. Appellants' Arguments

Appellants assert that the trial court erred in its November 30, 2020 Order in Lieu of Opinion when it determined that there had been improper service of Appellants' Concise Statement on the trial court. Appellants contend that they served a *pro se* Concise Statement on October 26, 2020, and another Concise Statement, filed by their legal counsel, the following day. Appellants state that the prothonotary of the trial court confirmed receipt of both. Appellants state that "[i]t is not clear from the record why [the trial court judge] did not receive his copy . . . ." Appellants' Br. at 30. Thus, Appellants argue that the facts do not support quashing their appeal for failure to preserve any issues for review, as suggested in the trial court's November 30, 2020 Order in Lieu of Opinion, and this Court should review their appeal on the merits. Appellants' Br. at 31.

In addition, Appellants argue that the trial court erred by finding civil contempt where the requirements for a civil contempt order were not met. Citing *Marian Shop, Inc. v. Baird*, 670 A.2d 671, 673 (Pa. Super. 1996), Appellants note that "[a] mere showing of noncompliance with a court order, or even misconduct, is not sufficient to prove civil contempt." Appellants' Br. at 29. "To sustain a finding of civil contempt, the complaining party must prove: (1) that the contemnor had notice of the specific order or decree which he is alleged to have disobeyed; (2) that the act constituting the contemnor's violation was volitional; and (3) **that the contemnor acted with wrongful intent**." Appellants' Br. at 32 (citing *Marian Shop, Inc.*, 670 A.2d at 674) (emphasis added by Appellants). Further, Appellants note that "[p]rocedurally, the

---

*One Meridian Partners, LLP v. Zoning Bd. of Adjustment of City of Phila.*, 867 A.2d 706 (Pa. Cmwlth. 2005).

12

court must undertake: (1) a rule to show cause; (2) an answer and hearing; (3) a rule absolute; (4) a hearing on the contempt citation; and (5) an adjudication of contempt." Appellants' Br. at 32 (citing *McMahon v. McMahon*, 706 A.2d 350, 356 (Pa. Super. 1998)). Appellants state that the record in the instant matter does not show that these requirements were met. Appellants' Br. at 33. Appellants add that the record does not support that the Township proved, and the trial court found, that Appellants acted with wrongful intent. Appellants' Br. at 34. Appellants note that, at the August 27, 2020 hearing before the trial court, they offered to make a payment of $346,198.50 to cover the attorney's fees claimed by the Township and the Master and to cover the estimated mold remediation costs of approximately $147,000. *Id.* In this same regard, Appellants assert that the trial court abused its discretion by ordering the Property to be sold.

Appellants argue that if this Court grants them appellate relief on the July 9, 2019 Order, in their related appeal to this Court, it should invalidate the September 8, 2020 Order as well.[11]

Finally, Appellants again raise the contention that Appellant G.C. does not own the Property and, thus, has no legal obligations relative to it.[12]

### B. The Township's Arguments

Citing *Knaus v. Knaus*, 127 A.2d 669 (Pa. 1956), the Township asserts that "[t]he Courts in this Commonwealth have long had the inherent power to enforce their [] Orders." Township's Br. at 6. As the Township states:

---

[11] This argument has been rendered moot by our March 9, 2021 opinion in the related matter. Thus, we will not address it further herein. *See N. Coventry Twp. v. Tripodi* (Pa. Cmwlth., No. 1073 C.D. 2019, filed Mar. 9, 2021), *appeal denied,* (Pa., No. 161 MAL 2021, filed Oct. 1, 2021).

[12] We addressed this contention in our prior opinion as well, and, thus, it is also moot here. *Id.*

13

This case began over [12] years ago. At no point in the litigation did Appellants cooperate with the [Township] with respect to the underlying [c]ode violations that only became worse over the years or with respect to [c]ourt [o]rders. In fact, this Court has consistently upheld the [trial court's] [o]rders. Some which were orders of Contempt [sic]. Initially the contempt orders dealt with Appellants refusal to sit at a deposition. Then as the years went by and no action was taken by Appellants to remediate the [c]ode violations, [the Township] requested the right to inspect to determine the habitability of said [P]roperty . . . .

Appellants had in excess of one year to comply with the Order of July 2019, and did not comply in any way . . . . There is nothing in the record verifying [that] Appellants attempted to purge their contempt by requesting the [trial court] accept approximately $325,000 instead as alleged . . . .

Appellants have had more opportunity to remediate the violations than the law requires . . . . The statutory requirements have been met and the valuations approved by the [trial court] . . . . It is now within the [trial court's] discretion to assure its Orders have been followed and just as importantly the health, safety and welfare of the citizens of [the Township] are taken into consideration.

Township's Br. at 6-8.

## IV. Discussion

At the outset, we note this Court's position in one of our previous opinions in the litigation between the instant parties. In *North Coventry Township. v. Tripodi* (Pa. Cmwlth., No. 851 C.D. 2017, filed June 4, 2018), slip op. at 9-10, WL 2470645, at *4, we stated:

"[Pa. R.A.P.] 1925(b) sets out a simple bright-line rule, which obligates an appellant to file and *serve* a [Pa. R.A.P.] 1925(b) statement, when so ordered . . . ." [Com.] v. Hill, 16 A.3d 484, 494 (Pa. 2011) (emphasis added). "[F]ailure to comply with the minimal requirements of [Pa. R.A.P.] 1925(b) will result in automatic waiver of the issues raised," even where granting relief has equitable appeal. [Com.] v. Schofield, 888 A.2d 771, 774 (Pa. 2005). The provisions of [Pa. R.A.P.] 1925 "are not

14

subject to *ad hoc* exceptions or selective enforcement[, and] [A]ppellants and their counsel are responsible for complying with the [Pa. R.A.P.'s] requirements." *Hill*, 16 A.3d at 494. As a result, "failure to serve a [Pa. R.A.P.] 1925(b) statement on the trial court judge constitutes a fatal defect which shall result in the issues being waived and the appeal being quashed." [*Com.*] *v. $766.00 U.S. Currency*, 948 A.2d 912, 913 (Pa. Cmwlth. 2008). Thus, we conclude that Appellants' failure to serve their Pa. R.A.P. 1925(b) statement on the trial [court] judge resulted in the issues being waived, and we must quash the appeal.

The above quote illustrates that Appellants are, or should be, familiar with the requirements of Pa. R.A.P. 1925(b) and the ramifications of failing to adhere to same. However, we cannot agree with the trial court, here, that Appellants' appeal must be quashed. Pa. R.A.P. 1925(b)(3)(iii) now requires[13] the trial court to include specific information in the order directing appellants to file a Statement of Errors Complained of on Appeal. Specifically, Pa. R.A.P. 1925(b)(3)(iii) reads:

> (3) Contents of order. The judge's order directing the filing and service of a Statement shall specify:
> . . . .
> (iii) that the Statement shall be served on the judge pursuant to paragraph (b)(1) **and both the place the appellant can serve the Statement in person and the address to which the appellant can mail the Statement**. In addition, the judge may provide an email, facsimile, or other alternative means for the appellant to serve the Statement on the judge; . . . .

(Emphasis added.)

In the present matter, the trial court's October 6, 2020 Order did not include "the place the appellant can serve the Statement in person and the address to which the appellant can mail the Statement." Pa. R.A.P. 1925(b)(3)(iii). Because of this

---

[13] This requirement became effective on October 1, 2019.

deficiency, we decline to find waiver of Appellants' appeal.[14]    Nonetheless, Appellants' October 26, 2020 filing may still be disregarded by this Court because Appellants filed the document *pro se* while they were simultaneously represented by legal counsel.[15]    However, Appellants' legal counsel filed a separate Pa. R.A.P. 1925(b) Statement of Errors Complained of on Appeal (*i.e.*, the counseled Statement referenced in the trial court's November 30, 2020 Order in Lieu of Pa. R.A.P. 1925(a) Opinion) with the trial court, but the trial court, in turn, dismissed *this* filing as untimely because it was mailed on October 28, 2020, one day after its due date.  In

[14] Although not binding on this Court, we note that in the recent opinion of *Commonwealth v. Smith*, 253 A.3d 297 (Pa. Super., No. 3249 EDA 2019, filed April 20, 2021) (Table), 2021 WL 1549788, at **4, the Pennsylvania Superior Court determined that a court order, which was nearly identical to the wording of the October 6, 2020 Order in the present matter, could not result in waiver. In *Smith*, the Superior Court stated:

> Here, Appellant was on notice that he must serve a copy of the concise statement on the [Post Conviction Relief Act (PCRA)] court or risk waiver.  In contrast to *Berg* [*v. Nationwide Mutual Insurance Company*, 6 A.3d 1002 (Pa. 2010),] it cannot be said that Appellant "substantially complied with the court's order" where he did not attempt to serve the PCRA court.  *Id*.  No published cases have yet considered whether the failure to include the newly-enacted specifications of place and address for service precludes a finding of waiver.  Nevertheless, another panel of this Court, in an unpublished memorandum, declined to find waiver when considering a nearly identical concise statement order to the one herein:  [T]he PCRA court's December 20, 2019 order failed to specify both the place and address where [the] appellant could serve his [Pa. R.A.P.] 1925(b) statement on the PCRA judge in person, as required by Pa. R.A.P. 1925(b)(3)(iii).  As the PCRA court's [Pa. R.A.P.] 1925(b) order failed to comply with Pa. R.A.P. 1925(b)(3)(iii), we decline to find waiver.  *See Commonwealth v. Jones*, 193 A.3d 957 961 (Pa. Super. 2018) (declining to find waiver where [Pa. R.A.P.] 1925(b) order is deficient)[;] *Commonwealth v. Chapman*, [Pa. Super., No. 175 & 176 EDA 2020, filed Dec. 23, 2020)].  In the interest of consistency, we decline to find waiver.

[15] In *Commonwealth v. Ali*, 10 A.3d 282, 293 (Pa. 2010), our Supreme Court held that where the appellant was represented by counsel at the time, his *pro se* Pa. R.A.P. 1925(b) statement was a legal nullity.  Quoting *Commonwealth v. Ellis*, 626 A.2d 1137, 1139-1141 (Pa. 1993), our Supreme Court stated "there is no constitutional right to hybrid representation either at trial or on appeal ...."

and of itself, the trial court's determination may have led to the disqualification of Appellants' appeal, but the record reveals that the counseled Statement was also filed electronically with the prothonotary of the trial court, on October 27, 2020,[16] the last possible date for filing. Thus, although the October 28, 2020 counseled Statement was untimely, the October 27, 2020 counseled Statement was not. Even though the October 27, 2020 filing was not served on the trial court judge as required, it does not result in waiver here because, again, the trial court erred by neglecting to include the required "place the appellant can serve the Statement in person and the address to which the appellant can mail the Statement," in the order directing Appellants to file a Statement of Errors Complained of on Appeal, per Pa. R.A.P. 1925(b)(3)(iii). Thus, we decline to quash Appellants' appeal as requested by the trial court in the November 30, 2020 Order in Lieu of Pa. R.A.P. 1925(a) Opinion. It is not lost on us that litigation in this case has been ongoing since 2007 and has been reviewed by this Court at least 5 times over the past 14 years. Nonetheless, we are constrained by the technical requirements of Pa. R.A.P. 1925(b)(3)(iii) to determine that Appellants' appeal, here, may not be quashed.

Accordingly, we are left without a basis to evaluate the appeal and must remand the matter to the trial court to prepare a Pa. R.A.P. 1925(a) opinion in support of its September 8, 2020 Order. *See Brown v. Zaken* (Pa. Cmwlth., No. 1347 C.D. 2016 filed Sept. 21, 2017), slip op. at 7-8, 2017 WL 4171298, at *4, in which we stated:

> Here, the trial court issued a conclusory order stating that Brown's complaint was frivolous under Section 6602(e)(2) of the Prison Litigation Reform Act. The trial court did not file a [Pa. R.A.P.] 1925(a) opinion, and the reasons for its decision do not readily appear of record. Without an explanation of why the complaint is frivolous, this Court is unable to

---

[16] The record includes an e-mail to Appellants' legal counsel, Frank L. Turner Jr., dated October 27, 2020, that the "CONCISE STATEMENT OF [ERRORS], was accepted by [the] Chester County Prothonotary's Office." R.R. at 247a.

conduct meaningful appellate review of the trial court's order and Brown's issues on appeal . . . . Accordingly, we must remand this case to the trial court to prepare a [Pa. R.A.P.] 1925(a) opinion.

Further, as our Supreme Court stated in *Commonwealth v. DeJesus*, 868 A.2d 379, 383-384 (Pa. 2005):

> [I]n any case where the trial court fails to prepare an opinion that addresses the issues upon which it passed and which are raised by a party on appeal, the net result is the same: the appellate court is deprived of explication and guidance on those issues from the judicial entity most familiar with the matter . . . . [W]e remand this matter to the trial court for issuance of an adequate opinion in accordance with Pa. R.A.P. 1925.

### V. Conclusion

Based on the foregoing, we remand to the trial court to prepare an opinion in support of its September 8, 2020 Order as required by Pa. R.A.P. 1925(a), so that we may conduct meaningful appellate review.

_____
J. ANDREW CROMPTON, Judge

18

IN THE COMMONWEALTH COURT OF PENNSYLVANIA

| | | |
|---|---|---|
| North Coventry Township | : | |
| | : | |
| v. | : | No. 1023 C.D. 2020 |
| | : | |
| Josephine Tripodi and Geri Carr, | : | |
| Appellants | : | |

# **O R D E R**

**AND NOW**, this 22nd day of December 2021, we **REMAND** this matter to the Court of Common Pleas of Chester County for preparation of a Pa. R.A.P. 1925(a) Opinion in support of its September 8, 2020 Order, within 30 days of the date of this Order. Jurisdiction retained.

_____
J. ANDREW CROMPTON, Judge